## B. M. BAKER v. THE STATE.

### No. 3208.    Decided October 14, 1914.

**1.—Rape—Continuance.**

Where the judgment is reversed and the cause remanded for other reasons, the overruling of an application for continuance need not be discussed; however, the absent testimony was material.

**2.—Same—Insufficiency of the Evidence—Force.**

Where, upon trial of rape by force, the evidence was insufficient to show a rape by force, the conviction could not be sustained.

Appeal from the District Court of Young. Tried below before the Hon. Edgar Scurry.

Appeal from a conviction of rape by force; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Arnold & Arnold* and *Kay & Akin,* for appellant.—On question of insufficiency of the evidence: Topalanck v. State, 40 Texas, 160; Gazley v. State, 17 Texas Crim. App., 267; Rhea v. State, 30 id., 483; Mooney v. State, 29 id., 257; Thompson v. State, 33 Texas Crim. Rep., 472; Price v. State, id., 143; Kennon v. State, 42 S. W. Rep., 376.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of rape and his punishment assessed at five years confinement in the penitentiary.

We need not discuss the ground complaining of the action of the court in overruling appellant's application for a continuance as the case will be reversed. We will say, though, that the testimony of Dr. J. W. Gallaher and Mrs. C. S. Wynns would relate to material matters. Dr. Gallaher, it is stated, would testify that prosecutrix had told him that appellant had never at any time had sexual intercourse with her. This at a time when there was no reason to falsify, whereas this record discloses that the lady made the complaint when it appeared that a most serious charge would probably be brought against her. It is stated that Mrs. Wynns occupied the adjoining room on the night of the alleged rape; that only a thin plank partition separated the rooms; that she heard no outcry or complaint of any character on that night. When it is considered that prosecutrix remained at the home of appellant several days thereafter; that no one heard an outcry that night; that she made no complaint that night, nor the next morning to anyone—in fact, made no complaint for months thereafter, the testimony becomes material in a case of rape by force.

In fact we would be unwilling to sustain a judgment of guilt of rape by force on testimony of the character shown in this record. The prosecutrix, Miss Johnnie Graves, says she was twenty years of age at the date of the alleged offense. Appellant was running the Mountain Side Hotel at Graham. Prosecutrix worked for appellant at this hotel, waiting on the table and doing other work. She says one night he came to her room and committed the act with which he is charged. She says about 11 o'clock on the night of January 19, 1913, "Beecher Baker came in there and kneeled down by my bed and began to play with me, and so directly he said, 'I am going to lay down by you,' and he did. I did make an effort at that time to prevent him from getting in the bed with me or laying down by me—I was trying to get him not to, just begging him not to. He was not undressed when he came into the room. I had disrobed. The defendant did have intercourse with me at that time, on that occasion. I guess that I understand what you mean by intercourse. It was without my consent. I did put forth efforts to prevent him from having intercourse with me there at that time. While he was doing this act I was just fighting and crying—that was all. The act did cause me pain and bloodshed. As to what he said to me with reference to this matter, he told me that if I told it he would kill me; he told me I was ruined if I did not marry him, said that he was going to marry me. I said, 'You are not going to marry me'; he said, 'I am.' He said, 'I did it because I would die before anybody else could have you and now they can not.' He said that he was going to get rid of his wife." That is all the evidence there is in the record tending to show rape by force. She admitted she remained in appellant's employ until in February; that she made no complaint to anyone the next morn-

ing, nor for months thereafter. She also admitted the rooms adjoining the one she occupied that night were also occupied. The occupants of the other rooms testify they heard no noise of any character that night. Appellant's father and mother testify that they occupied one of the adjoining rooms, and that the partition was so thin that often after the prosecutrix had gone to bed they lay in their bed and talked with her, speaking in an ordinary tone. The prosecutrix does not deny this, and they swear positively they heard no cry or noise of any character that night. In fact appellant's mother testifies she was in the room with prosecuting witness that night waiting on her and that appellant did not come in the room. It further appears that the next morning after this alleged rape the prosecutrix went about her work at the hotel apparently in her usual frame of mind, complaining to no one that she had been outraged. Charles Thigpen, Charles Osborn, Claud Rutherford, Mrs. Bridges, Will Bridges, Mrs. Gus Rutherford, Mrs. Fanny Rutherford, and other witnesses testify that the reputation of prosecutrix for virtue and chastity was bad. There is testimony in the record which would support a finding that appellant had sexual intercourse with prosecutrix at different times, but not under circumstances which would render him guilty of rape by force. It will be noted in the prosecutrix's testimony she says appellant promised to get rid of his then wife and marry her. Witnesses testify that the prosecutrix had told them while working at the hotel she would be Mrs. Baker soon, and the record discloses that no cry of rape was raised by her until months thereafter. It further appears from the testimony of Dr. Terrell that shortly before this indictment was found that the prosecutrix sent for him, having heard that he had a letter reflecting on her. After she had read the letter, which was written by appellant, she became angry. Then the doctor testifies: "I did have a conversation with her with reference to Beecher Baker having carnal intercourse with her. She seemed to be very angry with Beecher Baker and she told me if he fooled with her that she was going to kill him or something of that kind, if she came across him she would kill him, and I laughed and asked her where was the gun; she was a little excited—she said, 'Can't I get him for rape?' I said, 'Did he raps you?' She said, 'Well, not that I know of.' I said, 'What did he do?' She said, 'He came to my room one night about midnight, and came to the bed and sat down on the bed.' I said, 'Did he have intercourse with you?' and she said 'No.' I said, Did he get in bed with you?' and she said 'No.' I said, 'Did he put his hands on you?' She said, 'He only took hold of my hand and sat down on the side of my bed.' I said, 'Well, was there anyone close by, if you were frightened did you say anything?' She said, 'No.' I believe that she told me that some of the family were in the room adjoining her. I asked her why she came to me,—I said, 'I have never been your particular friend, I just hardly know you when I see you,' and she said that John Dolman told her to come to me and he told her that she would have to swear everything that she could against Baker, if she did not, she would get into trouble herself. Now, that may not be the exact words, but that was

the meaning of it, might have said that they would send her to the penitentiary or something of that kind." It further appears from the record that there was some investigation being had as to whether Baker, appellant, had tried to poison his wife, and she had been informed that she might be implicated in it. It was after this, and other matters unnecessary to recite, that she brought the charge of rape against appellant. As before stated, under such circumstances we do not feel inclined to let the judgment stand, when the prosecutrix by her testimony shows no great resistance was made, and the other testimony would indicate that if an act of intercourse took place on that occasion it was by mutual consent. It may be that the prosecutrix and appellant were criminally intimate and the testimony would suggest that probably this was true, but if he did undertake to poison his wife in order that he might marry the prosecutrix, of course he would be guilty of a grave criminal offense, but not of rape on the prosecutrix.

Having this view of the case, we do not deem it necessary to discuss the other questions raised.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*